OPINION
{¶ 1} Appellant, Anthony DeFranco, appeals the April 19, 2002 judgment entry of the Ashtabula County Court of Common Pleas, Juvenile Division, which granted permanent custody of his son, Nicholas Maciulewicz ("Nick"), to appellee, the Ashtabula County Children Services Board, and which terminated his parental rights.
{¶ 2} On August 14, 1998, appellee filed a complaint alleging that Nick, who was born on April 20, 1989, was an abused and neglected child, pursuant to R.C. 2151.031 and R.C. 2151.03. The complaint asserted that appellant was incarcerated in Pennsylvania, and that Nick's mother, Melanie Maciulewicz ("Melanie"), refused to pick Nick up from Belmont Pines Hospital upon his discharge.[1] In an entry dated September 17, 1998, the trial court awarded appellee temporary custody of Nick, and the matter was set for a dispositional hearing.[2] On November 10, 1998, a dispositional order was entered placing Nick in the temporary custody of appellee.
{¶ 3} On May 26, 1999, appellant filed a motion for visitation and shared parenting. Appellee filed a memorandum in opposition to the motion on June 3, 1999, and on June 7, 1999, the guardian ad litem filed a memorandum in opposition to appellant's motion. On June 11, 1999, the trial court denied appellant's motion. On July 19, 1999, appellant filed a motion to reconsider the June 11, 1999 order, but the trial court denied that motion on July 28, 1999. Thereafter, on August 27, 1999, appellee moved to modify the temporary commitment to a planned permanent living arrangement. On October 6, 1999, the trial court granted the motion and ordered that Nick be placed in the long term foster care of appellee. The trial court also denied appellant's request to participate in the hearing via telephone.
{¶ 4} On July 13, 2000, appellee filed a motion to extend the planned permanent living arrangement. In a September 18, 2000 judgment entry, the motion was granted. In that entry, appellant was denied visitation at the prison as it was not in the best interests of Nick, and it was determined that Melanie had failed to follow her case plan in any respect.
{¶ 5} On October 10, 2001, appellant filed a motion for definite visitation rights. On January 3, 2002, Melanie executed an agreement to permanently surrender Nick. On January 10, 2002, appellee filed a motion requesting a modification of temporary custody to permanent custody.[3]
On March 27, 2002, appellant filed a "Motion to Transport Inmate for Permanent Custody Hearing." Appellee moved to strike this motion. On April 2, 2002, the trial court granted appellant's motion and explained that prior to transporting appellant, the sheriff's department should "contact the Pennsylvania authorities to determine whether or not they will release the inmate to the custody of the Ashtabula County Sheriff's Department for transport to the Ashtabula County Court of Common Pleas, Juvenile Division, for hearings to he held in the above entitled case on April 18, 2002. * * * Should Pennsylvania authorities indicate that they will not release [appellant], then the obligation of the Ashtabula County Sheriff's Department for transportation is void."
{¶ 6} On April 16, 2002, appellant filed a motion for telephone participation as the Pennsylvania authorities would not transport him interstate, but the trial court denied the motion. The guardian ad litem filed her report with the trial court. On April 18, 2002, a hearing took place. Appellant filed a subpoena seeking to produce Nick for the hearing; however, on April 18, 2002, the guardian ad litem filed a motion to quash the subpoena, which the trial court granted. Appellant also subpoenaed his mother, Joanne DeFranco, but she failed to appear. Appellant orally moved for a continuance, which was denied. The trial court explained that "if this witness will not be present in light of a subpoena being issued for her presence, [then she] probably will not be a favorable witness to you anyway. Indicates a reluctance to testify. * * *"
{¶ 7} The testimony at the hearing consisted of Nick's treating psychologist, a licensed social worker employed by appellee, and Melanie. The psychologist testified that Nick did not receive any letters, telephone calls, or other type of communication from appellant. Appellant had not sent any gifts, monetary support, or clothing to Nick. In fact, according to the psychologist, Nick stated that "he has no relationship with [appellant] and has no expectation of seeing [appellant]." The psychologist indicated that Nick did not seem to have a bond with appellant and had not expressed a desire to be with him. The psychologist explained that it would be in Nick's best interests to be placed in a secure family setting.
{¶ 8} The social worker took the stand and related that Nick had not maintained any type of contact with appellant. She also stated that she did not "believe there [was] a bond or relationship" between Nick and appellant. She further testified that in her opinion, it would be in Nick's best interests if permanent custody was given to appellee.
{¶ 9} Melanie also took the stand and stated that it would be in Nick's best interests to allow appellee to have permanent custody. She also indicated that she felt that Nick should not have contact with appellant.
{¶ 10} In a judgment entry dated April 19, 2002, the trial court awarded appellee permanent custody of Nick and divested the parents of any and all parental rights. It is from that entry that appellant timely filed this appeal and posits the following as error:
 {¶ 11} "[1.] The [t]rial [c]ourt erred to the prejudice of [a]ppellant by not permitting him access to the [c]ourt to defend against the motion for permanent custody.
 {¶ 12} "[2.] The [t]rial [c]ourt erred to the prejudice of [a]ppellant by quashing the subpoena of [Nick] and not granting a continuance when a subpoenaed witness failed to appear."
{¶ 13} Under his first assignment of error, appellant asserts that the trial court erred by refusing to allow him to attend the permanent custody hearing.
{¶ 14} When the state initiates a permanent custody proceeding, parents must be afforded fundamentally fair procedures in accordance with the Fourteenth Amendment Due Process Clause and Section 16, Article I, of the Ohio Constitution. In re Sears (Jan 31, 2002), 10th Dist. No. 01AP-715, 2002 WL 124718, at 4, citing In re Elliott (June 25, 1993), 4th Dist. No. 92 CA 34, 1993 WL 268846. Natural parents have a constitutionally protected right to be present at permanent custody hearings and even though those same rights extend to an incarcerated parent, those rights may not be absolute. Id. citing In re Vandale (June 30, 1993), 4th Dist. No. 92 CA 31, 1993 WL 235599; see, also, In reJergens (June 26, 1998), 2d Dist. No. 16848, 1998 WL 336702; In re Smith
(Mar. 1, 1995), 9th Dist. No. 16778, 1995 WL 89455; Mancino v. Lakewood
(1987), 36 Ohio App.3d 219, 221.
{¶ 15} The standard to use to decide if an incarcerated parent should be present at a permanent custody hearing should be based on "`the best interest of the child or children involved. It is almost always in the best interest of the child to have the parent attend and testify in person in a permanent custody hearing. In making a well[-]reasoned and informed decision, a trial court is best served by having available as much information as possible. All things being equal, the testimony from a parent would provide more information than not having the parent.'" Inre Sears, supra, quoting In re Vandale (Aug. 12, 1992), Washington App. No. 92 CA 9, 1992 WL 208903.
{¶ 16} Furthermore, the United States Supreme Court, in Mathewsv. Eldridge (1976), 424 U.S. 319, 335, set forth a balancing test to be used to determine a parent's due process rights. The Supreme Court held that three factors must be considered: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function and fiscal and administrative burdens that the additional or substitute procedural requirements would entail. Id. Hence, in order to determine whether the trial court erred in denying appellant's request to participate at the hearing by telephone, we will evaluate the three factors pronounced inMathews.
{¶ 17} We first consider the private interest affected by the permanent commitment. We understand that appellant's right to raise his child is an "essential" and "basic" civil right. In re Murray (1990),52 Ohio St.3d 155, 157. In addition, appellant's fundamental liberty interest in the care, custody, and management of Nick did not dissolve just because he was incarcerated, was not a model parent, or lost temporary custody. See Santosky v. Kramer (1982), 455 U.S. 745, 753.
{¶ 18} We next address the second factor of the Mathews balancing test. Any risk of erroneous deprivation of appellant's private interest in not attending the hearing concerning his parental rights appears to have been fairly low. Appellant was represented by counsel at the hearing. Further, he was incarcerated for murder, and due to the imprisonment, there was no possibility of placing Nick with him within a reasonable time. Since counsel for appellant was present at the hearing, actually presented the testimony of Melanie and cross-examined witnesses, and did not object to appellant's absence, appellant's right to attend the hearing was effectively waived. In re McCaman (Oct. 2, 1991), 9th Dist. No. 15012, 1991 WL 199917, at 1. Appellant had the benefit of providing the court with his own testimony via deposition, but he did not do so. Hence, we conclude that appellant was afforded due process in this matter.
{¶ 19} We finally consider the third factor set forth in Mathews: the state's interest in parental termination proceedings. In examining this third factor, the Santosky court noted that two state interests are at stake in permanent custody proceedings: (1) a parens patriae interest in preserving and promoting the welfare of the child, and (2) a fiscal and administrative interest in reducing the cost and burden of such proceedings. Santosky, supra, at 766. In a permanent custody proceeding, the state's parens patriae interest is served by procedures that "promote an accurate determination of whether the natural parents can and will provide a normal home." Id. at 767.
{¶ 20} Here, the trial court granted appellant's motion to transport him for the permanent custody hearing; however, the Pennsylvania authorities did not allow his release. Appellant could have presented his testimony by way of deposition. The deposition would not have posed any undue fiscal or administrative burden upon the state, and appellant's due process rights would have been met. Yet, appellant did not present his testimony via deposition.
{¶ 21} Although the presence of the parent at a hearing is preferred, under the circumstances of this case, due process did not require that appellant be present at the hearing. However, it is our view that the trial court should have granted appellant's motion for telephonic participation, but any error that occurred was harmless at best. Appellant's first assignment of error is overruled.
{¶ 22} Under the second assignment of error, appellant argues that the trial court erred by quashing the subpoena of Nick and not granting a continuance when a subpoenaed witness failed to appear.
{¶ 23} We note that a court may only quash a subpoena under the conditions specified in Juv.R. 17(D):
 {¶ 24} "(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.
{¶ 25} "* * *
 {¶ 26} "(3) On timely motion, the court from which the subpoena was issued shall quash or modify the subpoena, or order appearance or production only under specified conditions, if the subpoena does any of the following:
{¶ 27} "* * *
{¶ 28} "(d) Subjects a person to undue burden.
 {¶ 29} "(4) Before filing a motion pursuant to division (D)(3)(d) of this rule, a person resisting discovery under this rule shall attempt to resolve any claim of undue burden through discussions with the issuing attorney. A motion filed pursuant to division (D)(3)(d) of this rule shall be supported by an affidavit of the subpoenaed person or a certificate of that person's attorney of the efforts made to resolve any claim of undue burden. * * *"
{¶ 30} In the instant matter, appellant alleges that the motion to quash failed to have the required affidavit and, thus, was defective. However, Juv.R. 17(D)(4) applies to a person resisting discovery. Here, the guardian ad litem filed a motion to quash a trial subpoena. Hence, no affidavit is required. Further, it is our position that the trial court did not err in preventing Nick from testifying as the court was acting in Nick's best interests. Appellant could have called the guardian ad litem to the stand as a witness and questioned her as to Nick's wishes, but chose not to do so. Consequently, there was no prejudice.
{¶ 31} Appellant also claims that the trial court erred in not granting a continuance when his mother failed to appear at the hearing.
{¶ 32} Juv.R. 23 states that: "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." The grant or denial of a continuance is a matter that is within the sound discretion of the trial judge. State v. Unger (1981), 67 Ohio St.2d 65, syllabus. In deciding whether to grant or deny a motion for continuance, the trial court must balance "any potential prejudice to a [party against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." Id. at 67.
{¶ 33} After carefully examining the record in this case, we conclude that the juvenile court properly exercised its discretion when it denied appellant's request for a continuance. Appellant failed to make an offer of proof of the anticipated testimony of his witness, and thus, waived any error in this regard on appeal. See In re Eubanks (Aug. 9, 2001), 8th Dist. No. 79117, 2001 WL 894253, at 4. Further, appellant has not shown that any unfair treatment resulted from his mother's failure to appear at the hearing. Consequently, it is our view that it was not an abuse of discretion for the trial court to deny appellant's motion for a continuance. Appellant's second assignment of error lacks merit.
{¶ 34} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.
JUDITH A. CHRISTLEY, J., DIANE V. GRENDELL, J., concur.
[1] Appellant is serving a life sentence without the possibility of parole for a murder conviction.
[2] We note that appellant filed a complaint for custody and visitation, which was pending in the Pennsylvania court system, when it was transferred to the Ashtabula County Court of Common Pleas on October 6, 1998.
[3] On February 7, 2002, appellant filed a request for his October 10, 2001 visitation motion to be held in abeyance until the permanent custody motion was adjudicated. The trial court granted appellant's request on February 12, 2002.